Below is an opinion of the court.

_____
PETER C. McKITTRICK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

In Re:

MICHAEL SCOTT CAMPBELL,

       Debtor.

Bankruptcy Case
No. 16-34692-pcm13

MEMORANDUM OPINION[1]

    This matter came before the court on the Motion for Disgorgement of Fees (the Motion to Disgorge), Doc. 139, filed by Nancy Campbell, who is the ex-wife of Michael Campbell, the debtor in this chapter 13[2] bankruptcy case.  Nancy is a creditor of Michael's by virtue of an

---

[1] This disposition is specific to this case and is not intended for publication or to have a controlling effect on other cases.  It may, however, be cited for whatever persuasive value it may have.

[2] Unless otherwise noted, all references to chapters, sections, and rules are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., and to the Federal Rules of Bankruptcy Procedure, Rules 1001, et seq.

Page 1 – MEMORANDUM OPINION

equalizing judgment entered in their state court divorce case.[3]  Nancy requests that this court require Michael's counsel, Wade Bettis (Bettis), to disgorge all fees he received in excess of the amount approved at confirmation of Michael's chapter 13 plan.  Nancy contends that those funds should be disgorged and paid to the chapter 13 trustee or returned to Michael's estate.[4]  For the reasons that follow, the court will require Bettis to disgorge $10,381.18.

## FACTS AND PROCEDURAL BACKGROUND

Michael filed a chapter 13 petition on December 14, 2016.  Doc. 1. On the same date, Bettis filed an attorney disclosure form (the ADF) using the required Local Bankruptcy Form (LBF), LBF 1305.  Doc. 2.  A copy of LBF 1305 is attached to this opinion as Exhibit 1.  Bettis marked the box indicating that his fee arrangement with Michael was a "Schedule 1" fee structure and that his total fee request for the life of the case, except for adversary proceedings and appeals, was $4,000, plus expenses of $310, for a total of $4,310.  Doc. 2.  As indicated on the ADF, Michael had paid $1,720 on the petition date, leaving $2,590 to be paid through the confirmed chapter 13 plan.  Doc. 2.

---

[3] For clarity, the court will refer to Nancy and Michael by their first names, no disrespect is intended.

[4] Michael died in September of 2020.

Although Bettis said on the ADF that he was charging Michael a $4,000 fixed-fee for the life of the bankruptcy case, the actual fee agreement between Bettis and Michael provided otherwise. On December 13, 2016, Michael signed a Contract for Legal Representation, which is attached to the ADF (the First Agreement). Doc. 2. The First Agreement indicates that some services would be included in the $4,000 fixed-fee, while others would be billed at an hourly rate. Under the First Agreement, "Standard Services" are covered by the $4,000 fixed-fee, and "Non-Standard Services" are billed at an hourly rate.[5] Doc. 2. The First Agreement specifically excludes services related to adversary proceedings, appeals, and proceedings in any non-bankruptcy court or administrative agency. Doc. 2.

The First Agreement, however, was not the first fee agreement that Michael signed. In October 2016, he signed a fee agreement with UpRight Law, LLC (hereinafter, the firm is referred to as "UpRight" and the agreement as the "UpRight Contract"). Doc. 126. Bettis was associated with, and signed the UpRight Contract on behalf of, UpRight. Under the UpRight Contract, Michael was obligated to pay the $310 filing fee and $1,720 prepetition, and $2,280 after the petition was filed, for a total of $4,310. Doc. 126. The amount due postpetition, $2,280, would be paid, subject to court approval, through the confirmed plan, and would

---

[5] The distinction between Standard and Non-Standard Services will be discussed in more detail below.

cover all attorney fees for the life of the chapter 13 case.[6]  Bettis
did not disclose the UpRight Contract to the court until May 24, 2018,
when he filed a second amended ADF.  Bettis has represented to the court
that he became uncomfortable with UpRight due to their well-chronicled
issues with courts around the country, so he and Michael terminated
their relationship with UpRight.[7]

Michael's chapter 13 case was contentious from the outset.  The
court ultimately confirmed a chapter 13 plan in July of 2018, after
extensive litigation between Michael and Nancy.[8]  A detailed recitation
of the history of those disputes is necessary to frame and understand
the matter currently before the court.

Approximately one month after Michael filed his chapter 13
petition, Nancy filed an objection to confirmation and a motion to
convert or dismiss the chapter 13 case.  Doc. 14.  Nancy objected to

---

[6] There is a discrepancy in the total fees stated in the UpRight
Contract.  In one section, it identifies total fees of $4,750.  However,
the section of the contract that actually breaks out the fees,
identifies total fees of $4,310.  Doc. 126.  The court assumes for
purposes of this discussion that $4,310 is the correct amount.

[7] Although Michael paid UpRight $1,720, it appears that Bettis received
only $170 from UpRight.  The question of whether Bettis is entitled to
any of the funds paid to Upright is not before the court.

[8] Michael's case originally was assigned to the Honorable David W.
Hercher.  Sometime after Michael's chapter 13 plan was confirmed, the
case was reassigned to the Honorable Peter C. McKittrick, in accordance
with the court's regular rotation of chapter 13 cases.  For ease of
reference, this opinion refers to "the court."

confirmation, alleging that Michael omitted and under-valued assets in his bankruptcy schedules, and lacked good faith in filing his chapter 13 petition.  Nancy also filed a motion for relief from the automatic stay. Doc. 17.  In February of 2017, Nancy obtained limited relief from stay, to file a state court contempt action against Michael and liquidate amounts due for spousal support and attorney fees.  The court then set further hearings on confirmation of Michael's chapter 13 plan and Nancy's motion to dismiss.  Doc. 28.  Thereafter, Nancy filed additional objections to confirmation, and a motion to require Michael to file an amended means test.  Docs. 33, 43.  The court held an evidentiary hearing on June 16, 2017, to address those disputes.

On March 13, 2018, the court issued a letter opinion finding that Michael did not file his Chapter 13 petition in bad faith and that neither dismissal, nor conversion was warranted.  Doc. 80.  The court also granted, in part, Nancy's motion to compel Michael to amend his means test form.  Docs. 80, 81.

Bettis filed amended schedules and means test documents in March and April of 2018, which were met with further objections from Nancy. Docs. 85-87, 89-92, 94-96.  On May 8, 2018, Michael filed an amended plan, to which Nancy also objected.  Docs. 99, 101.  The court determined that another evidentiary hearing was necessary to determine issues regarding Michael's disposable income.

From the petition date to the date the court confirmed Michael's chapter 13 plan, Bettis filed several ADFs.  The following table identifies each ADF, the date it was filed, which fee agreement contracts were attached, and the date of each contract.

| Disclosure Form | Docket # | Date Filed with Court | Attached Agreements and Date Signed |
|---|---|---|---|
| Original ADF | Doc. 2 | December 14, 2016 | First Agreement signed December 13, 2016 |
| First Amended AFD | Doc. 100 | May 8, 2018 | First Agreement signed December 13, 2016<br><br>Second Agreement signed May 4, 2017<br><br>Third Agreement signed June 8, 2017<br><br>Fourth Agreement signed July 14, 2017 |
| Second Amended ADF | Doc. 111 | May 24, 2018 | First Agreement signed December 13, 2016<br><br>Second Agreement signed May 4, 2017<br><br>Third Agreement signed June 8, 2017<br><br>Fourth Agreement signed July 14, 2017<br><br>UpRight Contract signed October 18, 2016 |
| Third Amended ADF | Doc. 126 | July 19, 2018 | First Agreement signed December 13, 2016<br><br>Upright Contract signed October 18, 2016 |

Case 16-34692-pcm13   Doc 171   Filed 08/11/21

For purposes of this opinion, the First and Second Agreements are virtually identical. The Third and Fourth Agreements are addendums that define the terms of a $20,000 retainer agreement between Bettis and Michael and explain that the retainer would come from Michael's retirement account, not from the bankruptcy estate or the chapter 13 trustee.

The issue of attorney fees and Bettis' entitlement to fees in excess of the $4,000 fixed-fee was broached at several hearings held before the court confirmed Michael's chapter 13 plan.

At an evidentiary hearing in June of 2017, Michael testified, while being examined by Nancy, that he had paid around $22,000 to Bettis by withdrawing $25,000 from a retirement account. Doc. 74. Bettis tried to interject and elaborate, but the court indicated that the attorney fee issue would be addressed later. At the end of the evidentiary hearing, Bettis, in an attempt to clarify the attorney fee issue, stated that Michael had retained him for the bankruptcy case and the state court divorce case. He said that he was holding the funds in trust, except for expenses, and that he would file an amended ADF.

On July 18, 2017, Bettis tried to file two duplicate Applications for Supplemental Compensation using LBF 1307. LBF 1307, however, is used to request supplemental fees only after a chapter 13 plan has been confirmed. Michael's plan had not yet been confirmed when Michael tried to file the Applications for Supplemental Compensation, so they were

rejected by the Clerk's Office and returned to Bettis.  Doc. 76.  On the returned Applications for Supplemental Compensation, Bettis indicated that he was requesting an additional $20,000 in attorney fees, but that the request would "not change the payment amount in the Chapter 13 plan."  Bettis attached itemizations to the rejected forms.

After the court issued its letter opinion resolving Nancy's motion to dismiss, it held an adjourned confirmation hearing on March 22, 2018. At that hearing, Nancy argued that the retirement funds that Michael used to pay to Bettis should have become part of the bankruptcy estate. The court required Bettis to file an amended ADF by April 16, 2018, to assist the court in determining whether the retirement funds used to pay Bettis were, in fact, property of the bankruptcy estate.  Doc. 88.

At the time of the next adjourned confirmation hearing on May 3, 2018, Bettis had not filed an amended ADF as required by the court. Bettis told the court at the May 3, 2018, hearing that he had tried to file an amended ADF but that the Clerk's office returned it, apparently referring to the Applications for Supplemental Compensation that he erroneously filed approximately 10 months earlier.

On May 8, 2018, Bettis filed the First Amended ADF, to which Nancy objected.  Docs. 100, 102.  Nancy again raised the issue of whether the funds Michael withdrew from his retirement account became non-exempt property of the estate.  The court required Bettis to file a second amended ADF because the First Amended ADF did not include the UpRight

Page 8 – MEMORANDUM OPINION

Contract.  The court also required both parties to submit correspondence summarizing the outstanding issues regarding confirmation of Michael's chapter 13 plan.

Nancy submitted her summary of outstanding issues.  Doc. 108.  With regard to Bettis' attorney fees, Nancy listed: (1) "what should be the disposition be [sic] of the funds withdrawn from the retirement account of debtor," (2) "should Mr. Bettis be allowed to amend his [ADF] to request hourly fees," and (3) "were the fees itemized by Mr. Bettis both reasonable and necessary in light of the multiple changes and alleged 'mistakes' reference [sic] by Mr. Bettis."  Doc. 108.

On May 24, 2018, Bettis filed the Second Amended ADF and uploaded correspondence regarding outstanding issues. Docs. 111, 112.  As pertinent here, Bettis represented that he had "not taken any funds from [Michael] for my work in his Chapter 13 bankruptcy[,]" and that there is no prohibition against paying for post-petition legal services with exempt assets.  Doc. 112.

On June 4, 2018, the court held a continued adjourned confirmation hearing.  The court stated that a debtor's attorney always has an ongoing obligation under the Bankruptcy Code to amend their ADF if the fee structure has changed.  However, the court determined that Bettis' entitlement to fees in excess of the $4,000 fixed-fee was not ripe for consideration in the context of plan confirmation and would be subject

to determination only if and when Bettis filed an Application for Supplemental Compensation postconfirmation.  Doc. 113.

The court held an evidentiary confirmation hearing on June 22, 2018, to address the outstanding issues regarding Michael's chapter 13 plan.  When Bettis again raised the issue of attorney fees, the court reiterated that that issue was not relevant to confirmation.

At a hearing held on July 13, 2018, the court ruled that it would confirm Michael's chapter 13 plan.  In so doing, the court approved the $4,000 fixed-fee and noted that Bettis' entitlement to any additional compensation would be decided if and when Bettis filed a postconfirmation Application for Supplemental Compensation.  Before the court entered an order confirming the plan, Bettis filed the Third Amended ADF.  Doc. 126.  Approximately a week later, the court entered an order confirming Michael's chapter 13 Plan.  Doc. 127.

Bettis received payment via the chapter 13 trustee for $2,590, which satisfied the remaining balance of the $4,000 fixed-fee approved by the court in connection with confirmation of Michael's chapter 13 plan.  Bettis never filed an Application for Supplemental Compensation postconfirmation or otherwise sought court approval for payment of any amount in excess of the $4,000 fixed-fee.

On January 4, 2021, Nancy filed the Motion to Disgorge.  Doc. 139. Specifically, Nancy requested the court order disgorged the "unapproved and unauthorized" attorney fees Bettis received from Michael because

Page 10 – MEMORANDUM OPINION

Bettis had not sought approval from the court.  Docs. 139, 147.  Nancy submitted a declaration stating that, after Michael's death, she discovered that Michael paid Bettis additional funds in March of 2017 and March of 2019.  Doc. 140.

At a hearing on March 1, 2021, Bettis stated that Michael retained him for representation in the bankruptcy case, a state court contempt action, and an appeal of Michael and Nancy's divorce.  The court ordered Bettis to provide copies of all bills sent to Michael with a summary of the total amount billed for each matter.  After considering the materials provided by Bettis and Nancy, the court finds that, for all matters, Michael paid Bettis $43,560.00 and Bettis refunded Michael $1,460.25, for a net total of $42,099.75.  Bettis received $19,772.36 from Michael for the time billed hourly in the bankruptcy matter.  Doc. 161.  Bettis also received $2,590 from the trustee and $170 from UpRight, but those amounts were part of the $4,000 fixed-fee arrangement that was approved at confirmation and, therefore, are not subject to the Motion to Disgorge.[9]  Doc. 127.

---

[9] This opinion does not address the attorney fees that Bettis received in connection with the state court proceedings because Nancy did not argue those fees are sufficiently connected with this bankruptcy case to warrant review under 11 U.S.C. § 329 and Rule 2017(b), and this court declines to make such a finding.  9 COLLIER ON BANKRUPTCY ¶ 2017.08 (16th ed. 2021) ("Rule 2017(b) requires that the services rendered or to be rendered have some (however minimal) connection with the bankruptcy case.").

To resolve the Motion to Disgorge, the court first must determine what was the fee agreement between Michael and Bettis, and whether Bettis is entitled to compensation in excess of the $4,000 fixed-fee disclosed in the original ADF.  Then, the court must identify the applicable fee disclosure requirements and whether Bettis complied with those requirements.  If he did not, the court must determine the extent to which Bettis should be required to disgorge the funds paid to him by Michael because of that failure.

ANALYSIS

This court has jurisdiction under 28 U.S.C. § 157(b)(2)(A) because this is a matter concerning the administration of the estate.

I.   <u>Michael's Fee Agreement with Bettis and Bettis' Entitlement to Fees in Excess of the $4,000 Fixed-Fee</u>

Because there are several attorney fee agreements between Bettis and Michael, as a threshold issue, the court must decide which fee agreement controls and then, whether the controlling fee agreement provides for attorney fees in excess of the $4,000 fixed-fee approved at confirmation of Michael's chapter 13 plan.

The UpRight Contract was the first agreement signed by Michael and Bettis.  However, the court finds that the UpRight Contract was unambiguously superseded by the First Agreement.  Therefore, the First Agreement is the operative contract between Michael and Bettis.

The First Agreement provides that the following are included in the $4,000 fixed-fee as Standard Services:

Analysis of Client(s)'s financial condition;

Counseling Client(s) as to the advisability of seeking relief in bankruptcy under Chapter 7 or Chapter 13 of Bankruptcy Code;

Advising Client(s) as to Client(s)'s eligibility to seek relief under Chapter 7 or Chapter 13 of the Bankruptcy Code;

Advising Client(s) as to the availability of exemptions under applicable law;

Assisting Client(s) in assembling all documents necessary for, or in connection with, the filing of a petition under the Bankruptcy Code;

Assisting Client(s) in meeting all conditions precedent to filing a petition for relief under the Bankruptcy Code and in meeting all conditions precedent to filing a petition for relief under the Bankruptcy Code and in meeting all conditions precedent to obtaining a discharge, if the Client(s) is eligible to receive a discharge;

Preparation and electronic filing of the Client(s)'s bankruptcy petition and supporting schedules;

Preparing Client(s) for examination at the meeting of creditors held pursuant to section 341 of the Bankruptcy Code;

Attending the meeting of creditors and all court hearings (except as otherwise excluded in this Contract);

Assisting the Client(s) with reaffirmation agreements, if applicable;

Assisting the Client(s) with routine lien avoidance proceedings, if applicable;

Assisting the Client(s) with the enforcement of the automatic stay, if required;

Communicating with Client(s)'s bankruptcy trustee; and

Page 13 – MEMORANDUM OPINION

Communicating with Client(s)'s creditors as necessary.

Doc. 2.  The First Agreement also identifies the following Non-Standard

Services, which would be billed at an hourly rate:

> Rule 2004 examinations, depositions, interrogatories, or other
> discovery proceedings;
>
> Defending claims that granting bankruptcy relief to Client(s)
> under the Bankruptcy Code would constitute "abuse" within the
> meaning of the Bankruptcy Code;
>
> Defending claims that one or more of Client(s)'s debts are
> non-dischargeable;
>
> Recovering garnished or seized property or funds.
>
> Defending claims that Client(s) is not entitled to a discharge
> under the Bankruptcy Code;
>
> Defending matters arising from Client(s)'s failure to disclose
> any material fact; or
>
> Defending matters arising from Client(s)'s false statements
> made in connection with the bankruptcy petition, schedules,
> statement of financial affairs or any document provided in
> support thereof.

Doc. 2.

Nancy argues that the court need not decide whether responding to

the issues raised by her in this case required Bettis to provide

Standard or Non-Standard Services, because Bettis is bound by the

original ADF, in which he selected a Schedule 1 fee arrangement and

represented that he would complete the case for a $4,000 fixed-fee.  The

court rejects that argument.  Although Bettis designated a Schedule 1

fee arrangement on the ADF, the actual contract attached to the ADF, the

First Agreement, does not describe a Schedule 1 fee structure.[10] Instead, the First Agreement provides that Standard Services are included in the $4,000 fixed-fee and Non-Standard Services will be billed at an hourly rate.  The court concludes that the language of the First Agreement overrides the ADF and that Bettis is entitled to fees in excess of the $4,000 fixed-fee.  Although Bettis erred when he selected the Schedule 1 box, the other pre-printed choices also did not accurately describe the actual fee agreement between Michael and Bettis.

Whether a service qualifies as Standard or Non-Standard depends on the facts of the particular case.  The court concludes that responding to Nancy's objections to Michael's chapter 13 plan and her motion to dismiss required Bettis to provide Non-Standard Services and that it was appropriate for Bettis to bill on an hourly basis for those services. In Nancy's objections, she argued that Michael's case should be dismissed or converted, which is the equivalent of claiming that Michael was not entitled to a discharge.  Nancy argued that Michael under-valued his assets and over-valued his expenses, which is the equivalent to claiming Michael made false statements in connection with his petition, schedules, or statement of financial affairs.  Nancy also argued that this was a one-creditor case, which is equivalent to arguing that Michael was abusing the Bankruptcy Code.  Finally, Nancy argued that

---

[10] The subsequent agreements filed by Bettis listed in the chart above are not pertinent to this discussion.

Michael omitted assets from his schedules, which is the equivalent to claiming he failed to disclose a material fact.

Nancy also moved for relief from the automatic stay. Doc. 17. The First Agreement clearly provides that assisting a client with the enforcement of the automatic stay qualifies as a Standard Service. Any time spent on Nancy's relief from stay motion should have been included in the $4,000 fixed-fee. Bettis billed $495 for such work and will be required to disgorge that amount.[11]

---

[11] The following table shows the work completed by Bettis in responding to Nancy's motion for relief from the automatic stay:

| Date | Description | Time | Slip Value |
|------|-------------|------|------------|
| 1/23/2017 | Review of file with Margie and preparation for response to relief from stay. Receipt and review of incoming correspondence from the adverse attorney an instructions of staff regarding the handling and disposition of this correspondence. | 1.00 | $225.00 |
| 1/31/2017 | Working on forms in response to motion for relief from stay. Response to objection to Chapter 13. | 0.60 | $135.00 |
| 2/13/2017 | Review of Order on Motion for Relief from Stay and instructions to staff regarding missing language. | 0.40 | $90.00 |
| 2/17/2017 | Receipt of BK Order re: Order on Relief from Stay | 0.20 | $45.00 |
| | Total | 2.2 | $495.00 |

II.  Fee Disclosure Requirements

The Bankruptcy Code and Rules require attorneys to disclose their fee agreements with debtors to the court.

Section 329 provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive to—

    (1) the estate, if the property transferred—

        (A) would have been property of the estate; or

        (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

    (2) the entity that made such payment.

§ 329.  Rule 2016(b), which implements § 329, provides:

Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity.  The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement

shall be filed and transmitted to the United States trustee within
14 days after any payment or agreement not previously disclosed.

The force of § 329 and Rule 2016 is two-fold, they (1) require a
debtor's attorney to disclose their fee agreement with the debtor and
(2) provide the bankruptcy court with authority to review attorney fees
for reasonableness, regardless of the source of the funds.  Cases that
apply § 329 and Rule 2016 give full effect to the plain and expansive
text of those provisions.

By its terms, § 329(a) requires a debtor's attorney to disclose to
the court all compensation paid or promised for services rendered "in
contemplation or in connection with" a bankruptcy case. § 329.  Section
329 requires "full disclosure of the amount and source of compensation."
In re Hanson, 223 B.R. 775, 781 (Bankr. D. Or. 1998).  Rule 2016(b)
requires that a debtor's attorney file a disclosure statement not later
than 15 days after the order for relief.  As part of that duty, the
debtor's attorney must ensure that the disclosure is accurate and that
it discloses "the precise nature of the fee arrangement," and when there
are changed circumstances, attorneys must supplement the original
statement.  In re Park-Helena Corp., 63 F.3d 877, 881 (9th Cir. 1995).
Additionally, Rule 2016(b) requires that the "statement shall include
the particulars of any such sharing or agreement to share by the
attorney."  Regarding the timing of any supplemental statements, Rule
2016(b) requires that "[a] supplemental statement shall be filed and

transmitted to the United States trustee within 15 days after <u>any</u> <u>payment or agreement not previously disclosed</u>." Rule 2016(b) (Emphasis added). The disclosure requirements apply "whether or not the attorney ever applies for compensation in the case." <u>In re Fraga</u>, 210 B.R. 812, 822 (9th Cir. 1997).

Along with the court's assessment for reasonableness, comes the power "to cancel compensation and order the return of any payments '[i]f such compensation exceeds the reasonable value of any such services.'" <u>In re Land</u>, 138 B.R. 66, 69 (D. Neb. 1992), <u>aff'd</u>, 994 F.2d 843 (8th Cir. 1993). Additionally, the court has the power to sanction violations of the disclosure rules. "[F]ailure to comply with the disclosure rules is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." <u>In re Park-Helena Corp.</u>, 63 F.3d at 880 (citing <u>In re Film Ventures Int'l Inc.</u>, 75 B.R. 250, 252 (B.A.P. 9th Cir. 1987)). "The disclosure rules are applied literally, even if the results are sometimes harsh." <u>Id</u>. at 881. "Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees." <u>Id</u>. at 882.

Section 329 was "enacted in recognition of the fact that '[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be

Page 19 – MEMORANDUM OPINION

subject to careful scrutiny.'" In re Land, 138 B.R. at 69 (quoting S.
Rep. No. 989, 95th Cong., 2d Sess. 39 (1978), reprinted in 1978
U.S.C.C.A.N. 5787, 5825).

> The provisions of the Bankruptcy Code and the Bankruptcy Rules
> that regulate attorney fees are designed to protect both
> creditors and the debtor against overreaching attorneys.  To
> ensure such protection, bankruptcy courts have broad and
> inherent authority to deny any and all compensations where an
> attorney fails to satisfy the requirements of the Code and
> Rules.

In re Kisseberth, 273 F.3d 714, 721 (6th Cir. 2001) (citing In re
Walters, 868 F.2d 665, 668 (4th Cir. 1989), and In re Downs, 103 F.3d
472, 479 (6th Cir. 1996)).

Bettis asserts that that the attorney fees paid by Michael are
beyond the power of this court to review, because the funds came from
Michael's exempt retirement account.  There are two problems with
Bettis' argument.

First, although the parties do not dispute that the funds Michael
used to pay Bettis came from an exempt retirement account, those funds
lost their exempt status because they were not subsequently deposited
into a qualifying tax-exempt account within sixty days of their removal,
as is required by § 522(b)(4).  If funds are distributed from an exempt
retirement fund and not rolled over and deposited into another eligible
fund within the prescribed time period, those funds lose their exempt
status.  In re Sullivan, 596 B.R. 325, 333 (Bankr. N.D. Tex. 2019)
(discussing 11 U.S.C. § 522(b)(4)(C) and (D)).  See also In re Brown,

Page 20 – MEMORANDUM OPINION

614 B.R. 416, 425-26 (B.A.P. 1st Cir. 2020) (agreeing with the analysis in In re Sullivan that funds lose their exempt status if they are not deposited into a tax-exempt fund within the 60-day period); In re Merillat, 2014 WL 1846105 at *6-9 (E.D. Mich. May 8, 2014) (holding that funds received from a voluntary liquidation of a 401(k) account were not exempt because the funds were not in a tax-exempt fund or account at the time of the bankruptcy filing).

Second, even if the funds Michael used to pay Bettis remained exempt, and the court does not believe that they did, Bettis still was required to disclose receipt of those funds to the court, and the court has the power to review the associated fees. Rule 2017, which is captioned Examination of Debtor's Transactions with Debtor's Attorney, provides:

> Payment or Transfer to Attorney After Order for Relief. On motion by the debtor, the United States trustee, or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case.

Rule 2017(b). "Any payment made to an attorney for representing a debtor in connection with a bankruptcy proceeding is reviewable by the bankruptcy court notwithstanding the source of payment." In re Kisseberth, 273 F.3d at 719 (6th Cir. 2001) (citing In re Walters, 868

Page 21 – MEMORANDUM OPINION

F.2d at 668).  See also In re Lewis, 113 F.3d 1040, 1046 (9th Cir.

1997)(the court may order disgorgement of any payment made to a debtor's

attorney irrespective of the source of the payment).  "The regulatory

effect of neither § 329 nor [Rule] 2017 is conditioned on the source of

payment; rather it depends upon the nature of the services rendered."

In re Walters, 868 F.2d at 668.

    Michael's confirmed chapter 13 plan, expressly provides for the

payment of attorney fees, "including supplemental compensation[.]"  Doc.

99.  In the Third Amended ADF that was on file when the court entered

its order confirming plan, Bettis represented:  "I will be filing a

supplemental application for attorney fees."  Doc. 126.  In this

district, when a plan provides for payment of postconfirmation fees, a

debtor's attorney is "required to submit a supplemental fee application

any time counsel seeks any fees that exceed the amount approved by the

court, whether the fees were incurred preconfirmation or

postconfirmation."  In re Hanson, 223 B.R. at 779.  Further, all fees

incurred that are not approved at confirmation, must pass through the

trustee's account, and cannot be paid directly from the debtor to the

debtor's attorney absent approval of the trustee.  In re Hanson, 223

B.R. at 778.[12]

---

[12] The court is aware that the trustee may consent to waiver of the
requirement that funds pass through the trustee's account in certain
cases.  However, no waiver was sought here.  Further, when such a waiver

In *Hanson*, the court rejected the attorney's argument that postconfirmation attorney fees are administrative expenses only if the attorney requests court approval of the compensation, concluding that "this district's local rules and forms at all pertinent times have made express provision for supplemental fee applications unless debtor's counsel elects to accept a flat fee for the entire life of the case." *In re Hanson*, 223 B.R. at 778. Bettis was required to submit supplemental fee applications, even if he was not seeking payment through Michael's chapter 13 plan.

The process for requesting supplemental compensation and receiving payment through the trustee's account "facilitates counsel's recovery of fees through the Chapter 13 plan and provides counsel with a secure, efficient collection service for their fees that is free of cost to counsel." *Id.* The *Hanson* court reasoned that "[t]reating both pre- and postconfirmation fees and expenses of Chapter 13 debtors' counsel as administrative expenses also ensures that the disclosure requirements of section 329[] are met and protects the integrity of the bankruptcy process." *Id.* at 779 n.12. Further, Applications for Supplemental Compensation provide adequate notice of the amount of the attorney fees incurred and the opportunity for objection, *see*, *e.g.*, Rule 2002(a)(6),

---

is granted by the trustee, the attorney must still file an Application for Supplemental Compensation to comply with § 329 and Rule 2016.

and the court with a consistent process by which it can scrutinize the attorney fees for reasonableness.  Id. at 779 n.12.

###   III.   Compliance and Disgorgement Analysis

Bettis violated the disclosure requirements imposed by § 329 and Rule 2016 in numerous ways over an extended period of time.

The first contract that Michael signed was the Upright Contract. Although the Upright Contract was superseded by the First Agreement, Bettis should have disclosed it and Michael's payment to UpRight in the original ADF.  He did not do that until May 24, 2018, when he filed the Second Amended ADF.  Doc. 111.

The original ADF not only failed to disclose the Upright Contract and Michael's payment to UpRight, it also inaccurately described the First Agreement.  Although the ADF does not provide for the type of fee arrangement that Bettis had with Michael, Bettis should have indicated a Schedule 2 fee arrangement, and added language to clarify that the "estimated fee" was really a $4,000 fixed-fee for all Standard Services, and an hourly fee for Non-Standard Services.  Bettis amended his ADF three times, but none of the amendments clearly captured the real fee arrangement between Bettis and Michael, and none of the amendments were timely.

Bettis also violated Rule 2016(b) when he tardily filed the Second, Third, and Fourth Agreements.  Those agreements were dated, May 4, 2017, June 8, 2017, and July 14, 2017, respectfully, but were not submitted to

Page 24 – MEMORANDUM OPINION

the court until May 8, 2018.  Doc. 111.  Rule 2016(b) requires that a supplemental statement must be filed within 15 days after the attorney receives payment or enters the agreement with the client.  Here, Bettis did not disclose the Second, Third, or Fourth Agreements to the court until approximately a year after he and Michael entered into them.

Bettis' disclosures were neither timely nor proactive.  The court is especially troubled by the fact that the attorney fee issue did not come to light until raised by Nancy.  Nancy raised the issue for the first time during her direct examination of Michael on June 16, 2017, when she inquired why Michael withdrew $25,000 from his retirement account.  Michael explained that the withdrawal was to pay $22,000 to Bettis.  It was not until after Nancy asked this question that Bettis disclosed that Michael had paid him a large retainer.  Bettis did make an attempt at disclosure when he tried to file the Applications for Supplemental Compensation in July of 2017, but that attempt was deficient and ineffective, for the reasons discussed above, and for the additional reason that he did not attach, and thus disclose, any of the pertinent fee agreements.

After the Clerk's Office returned the Applications for Supplemental Compensation to Bettis, he did not make another attempt to disclose his new fee agreements with Michael until Nancy raised the issue again, at adjourned confirmation hearings in March and May of 2018.  Those delays are inexcusable, and a clear violation of § 329 and Rule 2016.

Page 25 – MEMORANDUM OPINION

The Code and Rules are clear that any violation of the disclosure requirements may be sanctioned, including by a denial of all fees. Because the court finds that Bettis did not act willfully and made several attempts at disclosure, ineffective and incomplete as they were, the court will not order Bettis to disgorge all the fees at issue. In addition, the court has considered the fact that Michael prevailed in confirming a plan over the continuous objections of Nancy. In general, Bettis' services were necessary and beneficial to Michael.

Therefore, the court will require Bettis to disgorge $10,381.18 from the amount of hourly fees that Bettis received and will enter an order requiring the disgorged funds be paid to the trustee. That sum is comprised of the $495 reduction attributed to Bettis' work responding to Nancy's relief from stay motion, and 50% of the $19,772.36 paid by Michael for the hourly bankruptcy related services provided by Bettis.

CONCLUSION

For the reasons stated above, the court concludes that Bettis must disgorge a total of $10,381.18 to the chapter 13 trustee within 30 days of entry of the order.

###

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re                              ) Case No. _____
                                   )
                                   ) [ONLY FOR CHAPTER 13 CASES]
                                   ) DEBTOR'S ATTORNEY'S DISCLOSURE
                                   ) OF COMPENSATION AND ANY
                                   ) EMPLOYMENT AGREEMENT, AND
                                   ) APPLICATION FOR COMPENSATION,
Debtor(s)                          ) UNDER 11 USC §329 AND FRBP 2016(b)

Debtor's attorney discloses compensation paid or to be paid in the above referenced case. Debtor and debtor's attorney have agreed to attorney compensation, and ☐ have ☐ have not entered into an employment agreement. **A copy of the employment agreement, if any, is attached hereto.**

The applicable schedule for the fee agreement between debtor and debtor's attorney is indicated below. If Schedule 1 or Schedule 2 is selected, debtor(s), acting by and through the undersigned counsel, apply to the court for an order authorizing the compensation specified therein.

☐ **SCHEDULE 1:** The total fee request is $_____ ($4,750 maximum). This amount represents all fees for the entire life of the case except for appeals or any adversary proceeding. Debtor has agreed to pay fees of $_____ ($4,750 maximum) and expenses of $_____ for a total of $_____.
☐ Debtor ☐ (specify) _____ has paid $_____, leaving $ _____ to be paid through the plan.

☐ **SCHEDULE 2:** Regarding all services rendered through confirmation of the plan plus the initial audit of claims, debtor and debtor's attorney have agreed upon:
  ☐ (a) a flat fee (i.e., requiring no itemization) of $_____ ($3,450 maximum). Debtor and debtor's attorney have agreed that post-confirmation services (after the initial audit of claims) will be charged as specified in the attached agreement or, if there is no written agreement, as follows:

  ☐ (b) an estimated total fee of $_____ and expenses of $_____. Time records must be kept for all work performed both "pre" and "post" petition. Such records may be requested by the court at any time, and must show the time and rate applied to each service rendered. If the estimated fee exceeds $3,450, an itemized statement showing the time and hourly rate applied to each service rendered, attached to LBF 1306, must be filed with the court not less than one week prior to the final confirmation hearing.

  ☐ Debtor ☐ (specify) _____ has paid $_____, leaving $ _____ to be paid through the plan.

1305 (12/1/2017) **Page 1 of 2**                    ***SEE NEXT PAGE***

Exhibit 1

Case 16-34692-pcm13   Doc 171   Filed 08/11/21

**SCHEDULE 3:** [COMPLETE ONLY IF CURRENT ATTORNEY WAS RETAINED AFTER CONFIRMATION OF A PLAN.] Debtor and debtor's attorney have agreed to fee arrangements as follows:

☐ Debtor  ☐ (specify) _____ has paid $_____, leaving $_____ to be paid through the plan.

[If the services specified in a previously submitted Schedule 1 or Schedule 2 (through confirmation and the initial audit of claims) were not completed] The debtor, the debtor's former attorney, and the debtor's current attorney have agreed to the following with respect to the former attorney's fees and will apply for any necessary court order for approval:

<u>**IMPORTANT**</u>:

1. No additional compensation requests will be granted if SCHEDULE 1 is selected, or after a final application is filed if SCHEDULE 2 or SCHEDULE 3 is selected.

2. Supplemental applications for compensation: (a) may only be filed if SCHEDULE 2 or SCHEDULE 3 is selected;(b) will not be considered unless the application is clearly marked as a final compensation application, or unless the supplemental compensation requested is more than $500 and at least 6 months have expired since the filing of the case or since the filing of any earlier application; and (c) must be filed using LBF #1307, including an itemization of all services previously performed for which no previous itemization and application has been filed.

I certify there is no agreement to share compensation with any other person, except with a regular member, partner, or associate of my attorney firm, except as follows (provide details):

I further certify that on _____ a copy of this document was served on the debtor(s) and trustee.

DATED: _____

_____
Debtor's Attorney

1305 (12/1/2017) **Page 2 of 2**

Exhibit 1